UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

MARIANNE KANE             :
    *Plaintiff*           :
                    :
v.                   :        C.A. No.
                    :
LIFE INSURANCE COMPANY   :
OF NORTH AMERICA d/b/a    :
CIGNA GROUP INSURANCE    :
    *Defendant*         :

## **COMPLAINT**

Now comes the Plaintiff in the above entitled matter and complains as follows:

### **Nature of Action**

1.    This is an action seeking an award to Plaintiff of long-term disability ("LTD") benefits under the group long-term disability plan (the "Plan") established by Southwest Airlines Company ("Southwest Airlines") which is administered and insured by Life Insurance Company of North America d/b/a Cigna Group Insurance ("Cigna").

2.    Plaintiff seeks recovery of benefits pursuant to §502(a)(1)(B) of ERISA (29 U.S.C. §1132(a)(1)(B)).

3.    At all relevant times, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1), and as a result of her employment, Plaintiff was qualified under the Plan as a "participant" as defined by 29 U.S.C. §1002(7).  This claim relates to benefits under the foregoing Plan.

### **Parties**

4.    Plaintiff, Marianne Kane, is and was at all relevant times a resident of the State of Rhode Island.

5.    Defendant, Life Insurance Company of North America d/b/a Cigna Group Insurance, upon information and belief, was at all relevant times an insurance company registered to do business in Rhode Island and having a usual place of business located at Two Liberty Place, 1601 Chestnut Street, Philadelphia, PA 19192.

## Jurisdiction and Venue

6.    At all relevant times, Defendant had sufficient minimum contacts within the State of Rhode Island to satisfy the requirements for personal jurisdiction pursuant to Rhode Island's Long Arm Statute.

7.    Jurisdiction of the Court is based upon the Employee Retirement Income Security Act of 1974 (ERISA), and in particular 29 U.S.C. §1132(e)(1) and §1132(f).  In addition, this action may be brought before this Court pursuant to 28 U.S.C. §1331, which gives the District Court jurisdiction over actions that arise under the laws of the United States.

8.    ERISA provides, at 29 U.S.C. §1133, a mechanism for administrative or internal appeal of benefit denials.  The administrative appeal process is satisfied and this dispute is ripe for suit.

9.    Venue is proper in this Court because Plaintiff is a resident of the State of Rhode Island, and Defendant is subject to this Court's personal jurisdiction with respect to this action. 28 U.S.C. §1391(c)(2).

## Statements of Fact

10.    Ms. Kane suffers from right wrist/hand pain, diminished strength, and restricted range of motion due to right distal radioulnar joint arthritis, right scapholunate ligament injury, and right thumb basal joint arthritis.

2

11.     Prior to her disability, Ms. Kane worked as an airplane flight attendant for Southwest Airlines.

12.     The Plan defines "Disabled" as follows:

> The Employee is considered Disabled if, solely because of Injury or Sickness, he or she is:
> 1. unable to perform the material duties of his or her Regular Occupation; or
> 2. unable to earn 80% or more of his or her Indexed Earnings from working in his or her Regular Occupation.
>
> After Disability Benefits have been payable for 24 months, the Employee is considered Disabled if, solely due to Injury or Sickness, he or she is:
> 1. unable to perform the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience; or
> 2. unable to earn 60% or more of his or her Indexed Earnings.

13.     The Plan defines "Regular Occupation" as "[t]he occupation the Employee routinely performs at the time the Disability begins.  In evaluating the Disability, the Insurance Company will consider the duties of the occupation as it is normally performed in the general labor market in the national economy.  It is not work tasks that are performed for a specific employer or at a specific location."

14.     Ms. Kane's Regular Occupation was an airplane flight attendant, which required her to "[p]eform[] a variety of personal services conducive to safety and comfort of airline passengers during flight."

15.     Ms. Kane's Regular Occupation as an airplane flight attendant is a medium strength occupation, which required lifting, carrying, pushing, and pulling 20 to 50 pounds occasionally, 10 to 25 pounds frequently, and up to 10 pounds constantly.

16.     Ms. Kane became totally disabled under the terms of the Plan on or about December 15, 2013, after she fell in her driveway and fractured her right wrist.

17.     Ms. Kane's wrist was initially placed in a cast and she underwent physical therapy.  Ms. Kane's symptoms did not improve with physical therapy.

18.     On or about May 19, 2014, Cigna determined that Ms. Kane was disabled from her Regular Occupation under the terms of the Plan, with benefits beginning on March 17, 2014.

19.     On May 21, 2014, due to her persistent symptoms, Ms. Kane underwent an A1 pulley release of the right middle and ring fingers; a right wrist arthroscopy with debridement; and an open reconstruction of the scapholunate/lunotriquetral ligaments with flexor carpi radialis tendon graft/pinning performed by orthopedic surgeon Manuel DaSilva, M.D.

20.     On June 27, 2014, Dr. DaSilva removed the surgical hardware from Ms. Kane's wrist, which had been installed on May 21, 2014.

21.     Following surgery, Ms. Kane again began physical therapy for her right hand and wrist.

22.     Despite physical therapy, Ms. Kane continued to suffer from pain in her right hand and wrist.

23.     On November 13, 2014, Dr. DaSilva performed a distal radial ulnar joint reconstruction with palmaris tendon graft.

24.     Following surgery, Ms. Kane once again began physical therapy for her right hand and wrist.

**The Social Security Administration determined that Ms. Kane was disabled**

25.     On or about February 11, 2015, the Social Security Administration ("SSA") determined that Ms. Kane was totally disabled as of December 15, 2013 and approved her claim for Social Security Disability Insurance ("SSDI") benefits.

26. Disability under the SSDI rules is defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505.

27. The SSDI definition of disability is more difficult to satisfy than the Plan's Regular Occupation and Any Occupation definitions of disability.

28. Cigna reduced Ms. Kane's monthly LTD benefit by the amount of her base monthly SSDI benefit. This decreased the monthly LTD benefit that Cigna paid to Ms. Kane from $3,175 down to $1,414.

29. Ms. Kane has continuously met the SSA's definition of disability and received SSDI benefits through the date of filing this complaint.

**Cigna continued to find Ms. Kane totally disabled**

30. Despite the additional surgery and physical therapy, Ms. Kane continued to suffer from pain and weakness in her right hand and wrist.

31. On April 16, 2015, Dr. DaSilva performed a ligament reconstruction and tendon interposition and ulnar collateral ligament repair on Ms. Kane's right thumb.

32. Following surgery, Ms. Kane again began physical therapy for her right hand and wrist.

33. On September 24, 2015, Cigna wrote to Ms. Kane, informing her that it had begun a review of her claim to determine if she would remain eligible for benefits under the Any Occupation definition of disability.

34. Despite another surgery and additional physical therapy, Ms. Kane continued to suffer from pain and weakness which functionally limited her.

35.  On October 14, 2015, Dr. DaSilva wrote the following in his exam note: "This is an unfortunate situation given the fact that [Ms. Kane] is right-handed and currently there is no way that she can return to her regular duties as a flight attendant.  She is not able to do activities of daily living.  So she is **not even close at being able to return to any type of occupation at this point**."  (emphasis added).

36.  On October 26, 2015, Ms. Kane's primary care physician, Nicole Somvanshi, M.D., observed: "[Ms. Kane] has a lot of atrophy in right hand, and a lot of weakness."

37.  On November 9, 2015, Cigna disability claim manager, Jungwoong Kim wrote to Ms. Kane, informing her that the definition of disability was changing in a few months and Cigna was beginning its review to determine if Ms. Kane would remain eligible for benefits.

38.  On November 12, 2015, Ms. Kane underwent a right thumb metacarpophalangeal joint fusion performed by Dr. DaSilva.

39.  On or about December 9, 2015, Dr. DaSilva wrote Ms. Kane out of work for an additional two months.

40.  On or about January 13, 2016, Cigna nurse case manager, Terry Williamson referred Ms. Kane's file to the "MD" to address whether "the right wrist limitations support the imposed restrictions of no work."

41.  On or about January 20, 2016, Ms. Kane's file was reviewed by Cigna's consultant, Brian Cable, M.D., an orthopedic surgeon.

42.  Dr. Cable determined: "The treating provider's opinion is well supported by medically acceptable clinical or laboratory diagnostic techniques and is consistent with the other

substantial evidence in the claim file because 3 months is not an unreasonable amount of time to return to work following a successful fusion of the thumb."

**Cigna terminated Ms. Kane's LTD benefits**

43.     On or about March 17, 2016, the definition of Disability under the Plan changed from Regular Occupation to Any Occupation.

44.     On July 5, 2016, Dr. DaSilva wrote the following in his exam note: "No significant change.  She is not using the hand.  The ulnar dorsal aspect of the wrist is becoming more painful.  On examination, no swelling over the radial aspect of the hand.  There is swelling and tenderness over the DRUJ aggravated with pronation and supination." Dr. DaSilva also wrote Ms. Kane out of work for an additional four months.

45.     On or about July 14, 2016, Cigna commenced another review of Ms. Kane's claim.

46.     On or about July 25, 2016, Cigna nurse case manager, Karen Ingram was assigned the task of "clarify[ing] the customers functional limitations to support the imposed restrictions."

47.     On or about July 26, 2016, Ms. Ingram wrote to Dr. DaSilva, asking for clarification of Ms. Kane's functional limitations and restrictions.  The letter noted: "We are in receipt of your last office visit note from 7/5/16.  Your physical exam is unremarkable and a functional loss is not clear."

48.     On or about July 28, 2016, Dr. DaSilva left a phone message for Ms. Ingram.

49.     On or about July 28, 2016, a Cigna internal claim note written by Ms. Ingram stated: "Received message from Dr. DaSilva- stating customer is disabled and cannot work- still has pain in wrist, is weak and can't perform ADL [(activities of daily living)], has limited

mobility Just because I say unremarkable doesn't mean it isn't abnormal just mean[s] it is unchanged from previous visit."

50.   On or about July 29, 2016, a Cigna internal claim note written by Ms. Ingram stated: "Available medical for review does not support a no work restriction as evidenced by lack of updated diagnostic test ROM in degrees and strength measurements."  Ms. Ingram referred Ms. Kane's file to an orthopedic doctor to determine whether "available medical for review support restrictions and if so for how long."

51.   On or about July 29, 2016, Ms. Kane's file was reviewed by Cigna's associate medical director, Anthony Watson, M.D., an orthopedic surgeon.

52.   Dr. Watson's July 29, 2016 review concluded that Ms. Kane had no restrictions or limitations because "there is no documentation of wrist motion, strength, or stability impairment."

53.   Dr. Watson's July 29, 2016 review further concluded that Dr. DaSilva's "opinion is not well supported by medically acceptable clinical or laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the claim file because no upper or lower extremity or trunk impairment is documented.  Nonunion of the arthrodesis is not documented.  More than adequate time has elapsed for functional tissue healing and rehabilitation to allow unrestricted activity.  Fusion of the thumb metacarpophalangeal joint does not preclude unrestricted activity."

54.   On or about August 8, 2016, Cigna received updated medical records from Dr. DaSilva.

55.   On or about August 12, 2016, Cigna submitted the updated medical records to Dr. Watson to determine whether they changed his prior review.

56.     Dr. Watson maintained his opinion that Ms. Kane had no restrictions and limitations because "[n]o impairment of the wrist or forearm is documented in the medical records submitted after [his] review on 7/29/16."

57.     On or about August 18, 2016, against the clear weight of the evidence, Cigna terminated Ms. Kane's LTD benefits.  In the denial letter, Cigna disability claim manager, Cathy Hanns wrote: "Based on the medical information in your claim file and the results of our review, we have determined that you have the ability to work, as a Flight Attendant.  As a result, we have concluded that you are not totally disabled from performing your own occupation."

**Ms. Kane appealed Cigna's wrongful termination of benefits**

58.     On November 14, 2016, Ms. Kane underwent a functional capacity evaluation ("FCE").

59.     The November 21, 2016 FCE report determined: "Mrs. Kane's objective findings of limited ROM [(range of motion)], strength and fine motor coordination as well as her functional limitation for bilateral carrying, lifting, pushing and pulling place her at the sedentary physical demand level ***using her left hand only***."  (emphasis added).

60.     On or about December 23, 2016, Dr. DaSilva wrote a report explaining Ms. Kane's medical and disability status.  He stated:

> I have performed five different surgical procedures on Marianne but unfortunately Marianne now has chronic pain with involvement of different joints which continue to affect her ability to do not just work but also activities of daily living.  Specifically, in terms of future treatment plans and prognosis she has worsening symptoms due to her Distal radioulnar joint (DRUJ) arthritis.  This has become quite debilitating and significantly affects her ability to grip, twist and turn her wrist.

61.     Dr. DaSilva assigned Ms. Kane a 34% right upper extremity disability rating and a 20% whole person disability rating under the American Medical Association Guidelines.

62.    On or about February 13, 2017, Ms. Kane timely appealed Cigna's wrongful termination of benefits and submitted 844 pages of documents bates numbered MK 000001-000844.

63.    On or about February 17, 2017, Ms. Kane's neurologist, Norman Gordon, M.D., wrote a report stating that "not only does [Ms. Kane] have diminished range of motion of this wrist but in addition she has visible atrophy 'loss of muscle bulk' as well."

64.    On or about February 21, 2017, Ms. Kane underwent an examination with vocational expert, Carl Barchi.

65.    After interviewing Ms. Kane and reviewing her medical records, Mr. Barchi determined that Ms. Kane could not perform the material duties of her regular occupation as a flight attendant or the material duties of any occupation for which she is qualified and earn 60% or more of her previous indexed earnings.

66.    Mr. Barchi opined that "the results of the 11/14/2016 FCE confirm that Mrs. Kane can only use her left hand if she were to attempt to return to work" and "the near and/or total loss of use of the dominant hand/[upper extremity] renders a person totally unable to perform any gainful, sustained work in the local or national economy."

67.    On or about March 31, 2017, Ms. Kane submitted additional information to Cigna in support of her appeal, bates numbered MK 000845-002173.

**Cigna overturned its decision to terminate Ms. Kane's LTD benefits, and then terminated benefits again one month later**

68.    On or about May 2, 2017, Cigna appeal claim manager, Welser Maltez referred Ms. Kane's file for an orthopedic peer review and an occupational medicine peer review through Cigna's vendor, Professional Disability Associates.

69.     On or about May 11, 2017, William Abraham, M.D., an orthopedic surgeon, reviewed

Ms. Kane's file.  Dr. Abraham determined that Ms. Kane's restrictions and limitations

were as follows:

> She would be able to sit, stand and walk frequently (2.5-5.5 hours).
> She would be able to occasionally (less than 2.5 hours) bend at the
> waist, twist, turn, stoop, squat, and kneel and climb stairs.  She
> would have no limitations with use of her left upper extremity for
> light gripping, grasping, pushing, pulling, or fine motor dexterity.
> She would be able to occasionally use her right upper extremity for
> light gripping, grasping, pushing, and fine motor dexterity.  She
> would be able to lift 10 pounds occasionally and lighter weights
> frequently.

70.     On or about May 16, 2017, Dr. Abraham sent questionnaires to Dr. Somvanshi and Dr.

DaSilva, listing his restrictions and limitations outlined above.

71.     On or about May 18, 2017, Ira Weisberg, M.D., an occupational medicine specialist,

reviewed Ms. Kane's file.  Dr. Weisberg determined that Ms. Kane could sit, stand, and

walk frequently (2.5-5.5 hours); lift, carry, push, and pull ten pounds frequently, 20

pounds occasionally, and 35 pounds rarely; reach above, squat, crouch, stoop, and climb

occasionally (0-2.5 hours); finger, handle, simple grasp, and firm grasp without

restrictions in the left hand; and finger, handle, simple grasp, and firm grasp occasionally

with the right hand.

72.     Neither Dr. Abraham's nor Dr. Weisberg's reports listed the November 21, 2016 FCE

report or Dr. DaSilva's December 23, 2016 report as part of the "Documents Reviewed"

or evidenced that Dr. Abraham or Dr. Weisberg took the substance of the November 21,

2016 FCE report and Dr. DaSilva's December 23, 2016 report into account.  Both

documents provided important evidence of Ms. Kane's disability, supporting that she

would be unable to use her right upper extremity *at all* if she were to return to work.

11

73.   Upon information and belief, Cigna failed to provide Dr. Abraham and Dr. Weisberg with the November 21, 2016 FCE report and Dr. DaSilva's December 23, 2016 report.

74.   On or about May 22, 2017, Dr. Somvanshi responded to Dr. Abraham's letter.  In regards to "Ms. Kane's ability to sustain full-time employment," Dr. Somvanshi stated: "If restrictions are in place of no repetitive overhead work with left arm, and ***no use of right hand/UE [upper extremity] at all***, then patient would be able to sustain full-time employment."  (emphasis added).

75.   On or about May 25, 2017, Carl Barchi wrote an addendum to his vocational report in response to Dr. Abraham's restrictions and limitations.

76.   Mr. Barchi opined that, even assuming Dr. Abraham's assessment of Ms. Kane's restrictions and limitations was correct, Ms. Kane still "cannot perform the material duties of any occupation for which she is, or may reasonably become, qualified based on education, training or experience" because limiting Ms. Kane to occasional use of her right upper extremity "represents about a 70% loss of functioning" and "a significant loss of functioning of the dominant hand . . . precludes the ability to sustain competitive levels of persistence, productivity and pace that occupations (and employers) expect."

77.   Mr. Barchi further opined that

> significant loss of functioning of [Ms. Kane's] dominant hand also severely impacts and diminishes her ability to execute tasks that are usually better performed with *bilateral* use of the hands and arms—such as reaching, handling, lifting and carrying.  Most or all occupations, including *sedentary* . . . require *more than occasional*, bilateral use of the upper extremities—and when the dominant hand is the more disabled of the two—as is Ms. Kane's situation, the inability to work consistently and competitively becomes more profound.  (emphasis in original).

78. On or about June 28, 2017, Mr. Maltez overturned Cigna's decision to terminate Ms. Kane's LTD benefits because "rationale stated that Cx [claimant] would be able to RTW [return to work] in her own occupation as Flight Attendant, Med occ.  However, based on the supported restrictions [], Cx would be unable to RTW in her own occ."

79. On or about July 27, 2017, Cigna's vocational rehabilitation specialist, Paul Wilson, conducted a transferable skills analysis, based on Dr. Abraham's restrictions and limitations.

80. Against the clear weight of the evidence, Mr. Wilson's July 27, 2017 transferable skills analysis determined that Ms. Kane could work as a registration clerk – a sedentary job which requires *frequent* reaching and handling.

81. Mr. Wilson's July 27, 2017 transferable skills analysis failed to explain how Ms. Kane could perform an occupation that required frequent reaching and handling, when Dr. Abraham's restrictions limited Ms. Kane to *occasional* use of her dominant right upper extremity.

82. On or about August 4, 2017, Ms. Hanns once again terminated Ms. Kane's LTD benefits. In the denial letter, Ms. Hanns wrote: "Based on the medical information in Mrs. Kane's claim file and the results of the Transferable Skills Analysis, we have determined that she has the ability to work, in the identified occupation.  As a result, we have concluded that she is not totally disabled from performing any occupation."

**Ms. Kane appealed Cigna's wrongful termination of benefits**

83. On August 10, 2017, Ms. Kane's counsel wrote to Cigna and requested a complete copy of her claim file.

84.   On or about August 23, 2017, Ms. Hanns purported to produce to counsel "a complete file copy of Mrs. Kane's Disability claim."

85.   The claim file produced by Ms. Hanns did not include the 844 pages of documents Ms. Kane submitted to Cigna on February 13, 2017 in support of her appeal, which included the November 21, 2016 FCE report and Dr. DaSilva's December 23, 2016 report.

86.   The certified mail receipt confirms that Ms. Kane's February 13, 2017 letter and the CD containing the documents bates numbered MK 000001-000844 were delivered to Cigna on February 17, 2017.  (*See* **Exhibit 1**).

87.   On August 31, 2017, Ms. Kane's counsel wrote to Ms. Hanns, explaining that documents were missing from the claim file and that it did not appear those documents were considered by Cigna's file reviewers, Dr. Abraham and Dr. Weisberg.

88.   Neither Ms. Hanns nor any other Cigna employee ever responded to counsel's August 31, 2017 letter.

89.   On September 22, 2017, Ms. Kane's counsel wrote to Ms. Hanns *again*, following-up on its August 31, 2017 letter.

90.   Neither Ms. Hanns nor any other Cigna employee ever responded to counsel's September 22, 2017 letter.

91.   On October 10, 2017, Ms. Kane's counsel wrote to Ms. Hanns a third time, following-up on its August 31, 2017 and September 22, 2017 letters.

92.   Neither Ms. Hanns nor any other Cigna employee ever responded to counsel's October 10, 2017 letter.

93.   Ms. Kane's counsel called Ms. Hanns on October 17, 2017.  Ms. Hanns informed counsel that the matter had been referred to her manager to review the claim file; to address

whether Cigna's file reviewers had examined the missing documents; and to resend the entire claim file to counsel.  Ms. Kane's counsel confirmed the substance of this call in a letter to Ms. Hann's.  (*See* **Exhibit 2**).

94.    On or about October 30, 2017, Ms. Hanns sent Ms. Kane's counsel a copy of what she called "the Long Term Disability file."  These documents did not include the 844 pages of documents submitted to Cigna on February 13, 2017 in support of Ms. Kane's appeal.

95.    Upon information and belief, Cigna and its file reviewers never considered the documents bates numbered MK 000001-000844, which were delivered to Cigna on February 17, 2017.

96.    On October 27, 2017, Ms. Kane followed-up with Dr. Somvanshi.  Upon physical exam, Dr. Somvanshi observed: "Right wrist with atrophy . . . There is atrophy of the forearm muscles.  Market [sic] decrease in range of motion.  Unable to pronate or supinate at all.  Thumb abduction is very weak."

97.    Dr. Somvanshi assessed: "Marianne persists with significant daily right wrist pain and lack of function.  She is unable to pronate or supinate.  She is unable to write at all.  I have excused her from filling out her office forms as this takes her quite some time.  I do not think she can work currently due to this persistent pain and lack of function."

98.    On or about December 1, 2017, Carl Barchi wrote another vocational report addendum in response to Mr. Wilson's July 27, 2017 transferable skills analysis.

99.    Mr. Barchi determined that "limiting Ms. Kane from using her right, *major* hand more than 2.5 hours in any given workday constitutes her *vocational loss* as being one of total disability" because it "precludes the ability to sustain competitive levels of persistence, pace and productivity that occupations such as Registration Clerks require" and "impacts

15

and diminishes her ability to execute Registration Clerk tasks that require *bilateral* upper extremity functioning, including reaching, handling, lifting, and carrying."  (emphasis in original).

100.   Mr. Barchi further opined that "Ms. Kane's self-reported, right hand pain upon even minimal use of the hand" and "Dr. Somvanshi's October 2017 findings of 'atrophy' and 'persistent pain and lack of function' . . . further support [his] opinion of [Ms. Kane's] total occupational disability, which *of course includes her inability to reliably perform the bilateral, hand-intensive tasks of the Registration Clerk position*, which Cigna's TSA proffered."  (emphasis added).

101.   On January 16, 2018, Ms. Kane timely appealed Cigna's wrongful termination of benefits and submitted 5,836 pages of documents bates numbered MK (Second Appeal) 000001-005836.

102.   With this appeal, Ms. Kane resubmitted the documents bates numbered MK 000001-000844 that were missing from Cigna's claim file.

103.   On February 2, 2018, Ms. Kane's counsel's staff received a voicemail from Ms. Hanns, confirming that Cigna received the CD which contained the 5,836 pages of documents Ms. Kane submitted.

**Against the clear weight of the evidence, Cigna upheld its termination of benefits**

104.   On February 7, 2018, Cigna wrote to Ms. Kane, stating that it had requested an external medical review and "[a]s this constitutes special circumstance we are requesting the permissible extension of 45 days that is allowed under the ERISA Regulations."

105.    Upon information and belief, contrary to Cigna's assertion in its February 7, 2018 letter, there were no "special circumstances" warranting extension under the ERISA regulations.

106.    Upon information and belief, Cigna did not request an external medical review until approximately one month later.

107.    Upon information and belief, on or about March 9, 2018, Cigna referred Ms. Kane's file for an orthopedic peer review and an occupational medicine peer review through its vendor, MES Solutions.

108.    On or about April 11, 2018, Ms. Kane's file was reviewed by Frank Polanco, M.D., an occupational medicine specialist.

109.    Dr. Polanco wrote the following on April 11, 2018:

> Restrictions supported: frequent walking, standing, sitting. Occasional kneeling.  No crawling.  Frequent reaching and bending.   Occasional light (20 pounds) grasping, gripping, and fingering with right hand, frequent grasping, gripping, and fingering with left hand.  Occasional lifting and carrying (with both hands) to 20 pounds, push/pull (primarily with left upper extremity) to 45 pounds.  Full-time, 40 hour capacity.

> While restrictions are supported, the findings do not reflect that the claimant is incapacitated or incapable of full-time physical/work activities.  She retains a functional gait, mobility, strength, and has no focal neurological deficits.

110.    Dr. Polanco's April 11, 2018 file review opinion was against the clear weight of the evidence.

111.    On or about April 12, 2018, Ms. Kane's file was reviewed by Christopher Balint, D.O., an orthopedic surgeon.

112.    Dr. Balint wrote the following on April 12, 2018:

The reviewer would feel that the claimant is permanently functionally limited with regard to the right upper extremity due to her residual deficits in strength, functional use and pain following the multiple surgeries on right wrist/hand after 12/2013 distal radius fracture. . . .

This review would feel that these permanent limits would be as follows: May lift, carry, push, pull up to 20 pounds occasionally and up to 10 pounds frequently, using bilateral arms.  No lifting, carrying, pushing, pulling of more than negligible amount with right upper extremity independently.  No such limit on use of left upper extremity independent use.  May sit, stand, walk, reach at all level without specific limits.  Would advise no climbing ladders or work at unprotected heights due to the lack of supination, pronation and grip strength along with pain from arthritis in right upper extremity.  No restrictions on left hand/upper extremity use. May use right upper extremity to grip, grasp, key, finger, fine/gross manipulate, handle occasionally as long as no supination or pronation activity required.  May climb stairs without specific limits.  May crawl, crouch, squat, kneel, stoop without specific limits.

113.   Dr. Balint's April 12, 2018 file review opinion was against the clear weight of the evidence.

114.   Neither Dr. Polanco's nor Dr. Balint's reports listed the November 21, 2016 FCE report or Dr. DaSilva's December 23, 2016 report as part of the "Data Reviewed" or evidenced that Dr. Polanco or Dr. Balint took the substance of the November 21, 2016 FCE report or Dr. DaSilva's December 23, 2016 report into account.  Both documents provided important evidence of Ms. Kane's disability, supporting that she would be unable to use her right upper extremity *at all* if she were to return to work.

115.   Neither Dr. Polanco's nor Dr. Balint's reports listed documents submitted on January 16, 2018 with Ms. Kane's appeal, including the medical records from Ms. Kane's appointments with Dr. Somvanshi in 2017 (including, but not limited to, exams dated March 20, 2017; April 3, 2017; April 25, 2017; June 19, 2017; August 14, 2017; and

October 27, 2017) and the December 1, 2017 vocational opinion of Carl Barchi, as part of the "Data Reviewed." These documents provide important evidence of Ms. Kane's disability, supporting that she would be unable to use her right upper extremity *at all* if she were to return to work.

116. Notwithstanding the fact that Ms. Kane provided records covering the time period through November 2017, Dr. Polanco wrote the following in his report: "Time period in question from 7/17/17 and continuing. There are ***no notes available within time period in question***." (emphasis added).

117. Notwithstanding the fact that Ms. Kane provided records covering the time period through November 2017, Dr. Balint wrote the following in his report: "Most recent medical assessment of the right upper extremity is a letter from [Ms. Kane's] neurologist, Dr. Gordon of 02/2017 . . . There are ***no more recent clinical notes from any physician post that date***." (emphasis added).

118. Upon information and belief, Cigna failed to provide Dr. Polanco and Dr. Balint with the November 21, 2016 FCE report, Dr. DaSilva's December 23, 2016 report, and the medical records submitted to Cigna on January 16, 2018 with Ms. Kane's appeal.

119. On or about May 3, 2018, Mr. Maltez upheld Cigna's wrongful termination of Ms. Kane's LTD benefits.

120. In the denial letter, Mr. Maltez wrote that, based on Dr. Polanco's and Dr. Balint's restrictions, Cigna reviewed the July 27, 2017 transferable skills analysis and "concluded that these restrictions are consistent with the occupation [(registration clerk)] found in that TSA."

121. Upon information and belief, Cigna did not meaningfully consider or respond to the fact that the occupation of registration clerk required *frequent* reaching and handling, which Dr. Abraham, Dr. Weisberg, Dr. Polanco, and Dr. Balint – Cigna's own doctors – said Ms. Kane could only do *occasionally* with her dominant right upper extremity.

122. On May 11, 2018, Ms. Kane's counsel wrote to Mr. Maltez and requested a complete copy of Ms. Kane's claim file.

123. On June 13, 2018, Ms. Kane's counsel's staff left a voicemail for Mr. Maltez, following-up on the claim file request, as Cigna had not yet responded.

124. On June 18, 2018, Ms. Kane's counsel's staff left a second voicemail for Mr. Maltez following-up on the claim file request, as Mr. Maltez never returned counsel's staff's call.

125. On June 19, 2018, Mr. Maltez left a voicemail for Ms. Kane's counsel's staff, stating that the May 11, 2018 request had been received, the support team was working on it, and he would be overnighting the claim file as soon as it was ready.

126. On June 26, 2018, Ms. Kane's counsel's staff wrote to Mr. Maltez, asking him to explain what was causing the delay in producing Ms. Kane's claim file and to advise of the date on which the claim file would be produced.

127. Neither Mr. Maltez nor any other Cigna employee ever responded to the June 26, 2018 letter.

128. On July 3, 2018, Ms. Kane's counsel's staff wrote to Mr. Maltez a second time, following-up on the June 26, 2018 letter, and again asking him to explain what was causing the delay in producing Ms. Kane's claim file and to advise of the date on which the claim file would be produced.

129. On July 10, 2018, Mr. Maltez purported to produce a "complete copy of [Ms. Kane's] LTD claim file," without explanation for the delay.

130. The documents produced by Mr. Maltez on July 10, 2018 did not include *any* of the 5,836 pages of documents Ms. Kane submitted with her January 16, 2018 appeal.

131. The documents produced by Mr. Maltez on July 10, 2018 *still* did not include the 844 pages of documents Ms. Kane submitted to Cigna on February 13, 2017 in support of her first appeal.

132. The documents produced by Mr. Maltez on July 10, 2018 did not include any of Cigna's claim notes.

133. An ERISA plan is required to "establish and maintain a procedure by which a claimant shall have a reasonable opportunity to appeal an adverse benefit determination . . . and under which there will be a full and fair review of the claim and the adverse benefit determination." 29 C.F.R. § 2560.503-1(h)(1).

134. A plan "will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . [p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." 29 C.F.R. § 2560.503-1(h)(2)(iii).

135. A document, record, or other information is relevant to a claim for benefits if it was relied upon in making the benefit determination *or* "[w]as submitted, considered, or generated in the course of making the benefit determination, without regard to whether such document, record, or other information was relied upon in making the benefit determination." 29 C.F.R. §§ 2560.503-1(m)(8)(i)-(ii).

21

136.  On July 23, 2018, Ms. Kane's counsel wrote a letter to Mr. Maltez (attached as **Exhibit 3**), explaining that documents were missing from the claim file and that it did not appear Dr. Polanco and Dr. Balint were provided with all of the relevant evidence pertaining to Ms. Kane's disability, including the November 21, 2016 FCE report, the December 23, 2016 Dr. DaSilva report, the recent treatment notes from Dr. Somvanshi, and the December 1, 2017 vocational report of Carl Barchi.  Ms. Kane's counsel pointed out to Mr. Maltez that Cigna had previously made similar errors in its handling of Ms. Kane's LTD claim.  Ms. Kane's counsel expressed concern over Ms. Kane's ability to obtain a full and fair review of Cigna's wrongful termination of benefits.  Ms. Kane's counsel asked Cigna to reinstate benefits.

137.  Cigna ignored Ms. Kane's counsel's request in the July 23, 2018 letter that it reinstate benefits.

138.  On August 1, 2018, Mr. Maltez again purported to produce a "complete copy of [Ms. Kane's] LTD claim file."

139.  The documents produced by Mr. Maltez on August 1, 2018 did not include any of the 5,836 pages of documents Ms. Kane submitted to Cigna with her January 16, 2018 appeal.

140.  The documents produced by Mr. Maltez on August 1, 2018 did not include the 844 pages of documents Ms. Kane submitted to Cigna on February 13, 2017 in support of her first appeal.

141.  Upon information and belief, the documents produced by Mr. Maltez on August 1, 2018 contained various letters sent by Cigna between May 9, 2014 and August 1, 2018 and

Cigna claim notes, but were otherwise an identical copy of the documents produced by Mr. Maltez on July 10, 2018.

142. Upon information and belief, no evaluator or decision-maker on Ms. Kane's claim ever considered the missing documents identified in Ms. Kane's July 23, 2018 letter.

143. Upon information and belief, Cigna and its file reviewers failed to consider all the relevant evidence before terminating Ms. Kane's LTD benefits and upholding that termination on appeal.

144. Cigna's decision to terminate Ms. Kane's LTD benefits and deny her appeal was against the clear weight of the evidence.

145. Cigna's decision to terminate Ms. Kane's LTD benefits and deny her appeal was wrong, arbitrary, and capricious.

146. Upon information and belief, Cigna was responsible for paying Plaintiff's LTD benefits.

147. Upon information and belief, Cigna had a financial conflict of interest serving as (a) the fiduciary to determine plan beneficiaries' entitlement to benefits, and (b) the entity responsible for paying such benefits from its own assets.

148. Upon information and belief, Cigna had a financial incentive to terminate Plaintiff's Plan benefits.

149. Upon information and belief, Cigna's wrongful conduct during the administration of Plaintiff's claim was the result of Cigna's conflict of interest.

150. Upon information and belief, Cigna's decision to deny Plaintiff's benefits was the result of Cigna's conflict of interest.

151. Upon information and belief, the opinion of Dr. Anthony Watson was influenced by Cigna's conflict of interest.

152.   Upon information and belief, the opinion of Dr. William Abraham was influenced by Cigna's conflict of interest, as well as his own financial conflict of interest and his desire for repeat business from Cigna and/or Professional Disability Associates.

153.   Upon information and belief, the opinion of Dr. Ira Weisberg was influenced by Cigna's conflict of interest, as well as his own financial conflict of interest and his desire for repeat business from Cigna and/or Professional Disability Associates.

154.   Upon information and belief, the opinion of Dr. Frank Polanco was influenced by Cigna's conflict of interest, as well as his own financial conflict of interest and his desire for repeat business from Cigna and/or MES Solutions.

155.   Upon information and belief, the opinion of Dr. Christopher Balint was influenced by Cigna's conflict of interest, as well as his own financial conflict of interest and his desire for repeat business from Cigna and/or MES Solutions.

156.   Under the terms of the Plan, Cigna has no discretion, therefore, the Court's review of Plaintiff's claim is *de novo*.

157.   Pursuant to R.I.G.L. § 27-4-28, Cigna has no discretion under the Plan, therefore, the Court's review of Plaintiff's claim is *de novo*.

158.   Based on the evidence submitted to Cigna or otherwise available to Cigna, establishing that Plaintiff has met the Plan conditions for entitlement to benefits continuously since December 15, 2013, and that she at all relevant times continued to meet said conditions, Plaintiff is entitled to payment of all Plan LTD benefits owed to her plus interest on all improperly withheld payments.

## COUNT I
### (Enforcement of Plaintiff's Rights Under the Plan
### – ERISA 29 U.S.C. §1132(a)(1)(B))

159.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

160.   Plaintiff is entitled to enforcement of all of her rights under the Plan, including but not

limited to, payment of all past and present monthly disability insurance benefits.

161.   Plaintiff is entitled to interest on all overdue payments.

## COUNT II
### (Breach of Fiduciary Duty Under the Plan
### – ERISA 29 U.S.C. §1104)

162.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

163.   To the detriment of Plaintiff, Cigna failed to discharge its duties with respect to the Plan

solely in the interest of the participants and beneficiaries and for the exclusive purpose of

providing benefits to participants and their beneficiaries and defraying reasonable

expenses of administering the plan.

164.   To the detriment of Plaintiff, Cigna failed to discharge its duties with respect to the Plan

solely in the interest of participants and beneficiaries and with the care, skill, prudence,

and diligence under the circumstances then prevailing that a prudent man acting in a like

capacity and familiar with such matters would use in the conduct of an enterprise of a like

character and with like aims.

## COUNT III
### (Clarification of Plaintiff's Rights to Future Benefits Under the Terms of the Plan
### – ERISA 29 U.S.C. §1132(a)(1)(B))

165.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

166.   Pursuant to 29 U.S.C. §1132(a)(1)(B), Plaintiff is entitled to clarification of her rights to

future benefits under the terms of the Plan.

25

167.   Plaintiff seeks a declaration that she has been continuously disabled under the terms of the Plan from December 15, 2013 to the present, and that she is entitled to any and all benefits wrongfully withheld for said period.

168.   Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongly withheld from her under the Plan.

**COUNT IV**
**(Declaration of Plaintiff's Rights Under the Plan – 28 U.S.C. §2201)**

169.   Plaintiff repeats and reaffirms the above paragraphs, as though fully set forth herein.

170.   Based on the above asserted facts and allegations, this matter constitutes a case in controversy under the Declaratory Judgment Act, 28 U.S.C. §2201 and Plaintiff is entitled to a declaratory judgment establishing her rights under the Plan.

171.   Plaintiff seeks a declaration that she has been continuously disabled under the terms of the Plan from December 15, 2013 through the present, and that she is entitled to any and all benefits wrongfully withheld under the Plan for said period.

172.   Plaintiff further seeks a declaration that she is entitled to interest on all benefits determined to have been wrongfully withheld from her under the Plan.


WHEREFORE, Plaintiff prays for the following relief:

A.   That the Court enter judgment in Plaintiff's favor and against Cigna and that the Court order Cigna to pay LTD income benefits to Plaintiff in the amount equal to the contractual amount of benefits to which Plaintiff is entitled.

B.   That the Court order Cigna to pay Plaintiff prejudgment interest on all benefits that have accrued prior to the date of judgment.

C.      That the Court order Cigna to continue paying Plaintiff benefits until such time as Plaintiff meets the policy conditions for discontinuance of benefits.

D.      That the Court award Plaintiff attorney's fees pursuant to 29 U.S.C. §1132(g).

E.      That the Court enter declaratory judgment clarifying and establishing Plaintiff's rights under the Plan.

F.      For such other legal or equitable relief as this Court deems just and proper, as well as the costs of suit.

The Plaintiff hereby designates J. Scott. Kilpatrick as Trial Counsel in this matter.

Plaintiff, by her attorneys,

*/s/* J. Scott Kilpatrick
J. Scott Kilpatrick, Esq. (#4036)
jskilpatrick@cck-law.com
Mason J. Waring, Esq. (#7737)
mwaring@cck-law.com
Leah Small, Esq. (#9701)
lsmall@cck-law.com
Chisholm Chisholm & Kilpatrick LTD
One Turks Head Place - Suite 1100
Providence, RI 02903
(401) 331-6300 Telephone
(401) 421-3185 Facsimile